2019-13-51 Mr. Jones, we're ready when you are. Good morning, Your Honors. May it please the Court. One of the fundamental errors committed by the Board below was the finding that there was likelihood of confusion between the Stratus Networks mark and UBTA's Strata Networks mark, based primarily on, in the Board's words, that the marks differed by only a syllable. Now, there are many examples by this Board and the TTAB in which marks differing by a word, by a syllable, nevertheless create very different commercial impressions, and this case is similar. These are two different words with different meanings and commercial impressions. Well, most of the words are the same, Stratus and Strata. The Board found that they're similar in appearance, sound, connotation, and commercial impression. The services are legally equivalent and move in the same trade channels, and third-party uses are different and weak. Those are a lot of factors. Sure. Facts. So, first, Your Honor, I think the words are similar, perhaps, in appearance, but the connotations are not. They are different words with different meanings. Stratus is a type of cloud, and Strata are layers of rocks in the ground. You mean clouds and rocks are worlds apart. Exactly, Your Honor. I mean, there couldn't be any more difference, sky and earth. And so the connotations, we just feel that that is wrong, and so that's to that point. And UBTA admits that they chose the Strata name to convey the rock-solid foundation of their business and their tie to technology. Stratus is, you know, and it's even, you know, gone further in the design element of the mark, which has clouds in it. So again, we think that's a fundamental- Isn't the Strata also a substrate? Strata? Yes. I believe so. I mean, having to do with rocks. A substrate. A substrate. I would agree with that. And when you're dealing with clouds and you're dealing with the Stratus, a particular type of cloud, aren't you talking about levels of the clouds? Well, I think the key element is you're dealing with clouds versus rocks, as far as the commercial impression. I think ordinary consumers are going to say, look, one is dealing with clouds, one's dealing with rocks. And again, UBTA chose that name to convey rocks, rock-solid foundational things of that nature. If Stratus refers to clouds, what's the plural? Strata? So it's the same word. I don't believe so, Your Honor. I don't- So the plural of- So stratum is the singular of strata. But I don't, honestly, I believe the stratus, the plural of stratus would be the same. I don't think it has a different plural. I think the poem, for me, is even if I were to agree with your argument as to meaning, similarity of the marks encapsulates sight, sound, and meaning. It's all three. And the marks look remarkably similar and they sound remarkably similar. So even if you're right that they have a different meaning, this is a question of fact that I review for a substantial evidence standard, and I don't see how, honestly, given the similarity of the words themselves in both sight and sound, that I could overturn a fact finding as not supported by substantial evidence, because both of those things are substantial evidence. You're really focusing on a point that is actually very good for you, but it's not enough to overcome a substantial evidence burden when the other two portions of the similarity analysis still favor the board's decision. I would only disagree with that, Your Honor, because I think the meaning portion has importance in this case to overturn substantial evidence because, again, with likelihood of confusion, we're not looking at whether a consumer is going to momentarily mix up the words. I meant to say stratus. I said strata. They're looking at, you know, is there actually going to be a likelihood of confusion as to source or origin for these two words? And when you have different words with different commercial impressions, the board didn't make a finding as to what consumer... That's exactly it. The commercial impressions are based on three things, the visual similarity of the marks, the sound of the mark, and the meaning. I'll let you argue however you want, but I'm having trouble imagining that I could overturn the board, even if I agree with everything you just said. And, Counselor, in response to that, also address the fact that both of the marks have the word networks under them. So if there's any momentary confusion and then there's an enlightenment somehow as to the dissimilarity of the marks, isn't the word networks that's under each of the words isn't that meaningful as well? So I think that, again, we would say that the meaning aspect and then the fact that there was no finding about consumer impression, about the meaning. I think the meaning trumps the sight and sound aspect of the word in this. And that's what has happened in cases finding surf and surge are different, even though they're very close, obviously, in sight and meaning, or buy and bin. Those are different words. And as far as the networks element of the mark, those are generic elements. And there's lots of cases saying that generic elements aren't given much weight in the analysis. It has spheres in the mark. Sure. So I'd say, again, there's cases that we cite that say that's a pretty generic element in marks, too. I mean, lots of logos have circles in them. You've made some good arguments, and maybe the best that can be made, but your real problem is the standard of review. The board made fact findings, and we owe deference to those fact findings. They found most of them are in favor of likelihood of confusion or neutral. And are there any that are in favor of no likelihood of confusion? Sure. So I think we could go to the customer sophistication point. Now, the board basically held that that was either neutral or slightly in our favor there. But there was a lot of evidence that showed that the customers are very sophisticated. In the case of Stratis, they're IT professionals. They contract for over $100,000 worth of services. It's a very long process. It's a very long sales process, which differs from UBTA, which is a lot more like a traditional. You do submit evidence on both sides to show the amounts they charge for their services, correct? I mean, you do have something in there. I think there's $165,000 contract for that, but yet that was just a figure put out there. There's no evidence to back that up, but to show that the other companies are charging similar prices. No. Well, there was a declaration, I believe, from Stratis to support the $135,000, I think, number. So there was evidence to support that. And the other side did present evidence that their customers provide, I think, $100 a month for the consumer side  And we've shown cases that support the idea that customers exercise a great deal of care in deciding who their Internet provider is going to be or things of that nature. The board didn't make any findings on the customer sophistication point. They basically just cited the fact that sophisticated customers aren't immune from confusion. And while that is true, there's lots of evidence here that was submitted. And I think that helps to offset any other factor. There's many cases from this court that say that that factor can be dispositive. And that makes sense. Even if you have a momentary mix-up in the look of the names, all things being equal, if you're going to spend $100,000 plus on something, and even if you're a consumer that's going to pay $100,000 or $1,000 a month on services, that's going to undo a lot of potential confusion. And in this case, the board didn't make really any finding there. And so I think in the weighing of the factors, which this court does obviously de novo, I think that that would be a basis for overturning the board as well, just the fact that they did not properly consider that point. The board also erred, we believe, in their method of analysis for the comparison of the goods and services. It was based primarily on a comparison of telephone services, cellular telephone services, telephone services in UBTA's registration, with voice over internet protocol. And pretty much all the other, there's many, many services listed between both that weren't really addressed at all. And I think the fundamental error here was that there was a comparison between the goods themselves and not consumer perception of those goods. And so the board basically said, okay, voice over internet protocol is a voice service, telephone services are voice communications. The board did devote an entire page to explaining for consumer sophistication. It didn't just avoid it or give it a slight note. I mean, there's a full page of its reasoning. My understanding was that the customer sophistication, what was argued was that, or what the board provided, was that customers aren't immune from confusion and that does not offset the other factors that they found. And again, there weren't actual, they didn't actually address the evidence that was provided and we feel the weighing of that with the other factors, we think that should be dispositive in this factor, the fact that the customer sophistication was as strong as it was in this case. Counsel, you enter your rebuttal time. You can continue or save it. I'll save the rest of my time for rebuttal. Thank you, Your Honor. Mr. Barlow. Thank you, Your Honors. May it please the Court. Matthew Barlow appearing on behalf of the affilee. I think it's important to remember at the outset, counsel vaguely alluded to it, but our standard review today is substantial evidence. Meaning, would a reasonable fact finder, viewing the evidence before it, come to this conclusion? And if it's reasonable to come to that conclusion, even if another conclusion could be reached, this Court must sustain the board's order. And the Trademark Toronto Pill Board reached a correct conclusion that the Stratus Networks Mark, as described in its application, is likely to cause confusion with the Strata Networks Mark, as described in its registration. The comparison that must be made before the Trademark Toronto Pill Board. They're not concerned with real world uses. They're concerned with what happens in the registration as compared to what's described in the application. The likelihood of confusion itself is a question of law. Review de novo. Certainly. That's not a question of fact review. Right. The overall conclusion of how they weighed the factors all together is a question of law that's renewed de novo. But the individual analysis of those factors, if they're supported by substantial evidence, must be affirmed. Now, if we look at the analysis the board made, they first looked at the similarity of the marks. And here the board reasonably compared the marks and reasonably considered the dictionary definition submitted by the parties. And then the board reasonably found that these marks are far more similar than they are dissimilar in sight, sound, and commercial impression. And that any difference in the meaning, quoting the board, does not significantly diminish the strong similarities in appearance and sound with the result that the marks convey overall commercial impressions that are more similar than dissimilar. I understand completely your argument on similarity of the marks. Would you mind talking about the customer sophistication? Opposing counsel talked a bit about that and the board didn't seem to make an express finding related to that. Right. So, I'm happy to address that, Your Honor. The board held, and I quote from them again, even if we accept in considering the fourth DuPont factor, applicants' assertion that the involved services may be the subjects of sophisticated purchases, even careful purchasers are likely to be confused by similar marks using connection with services that are in part legally identical. That's the board's holding. Now, they reviewed the evidence submitted by the applicant regarding that, which was the naked testimony of a CEO accompanied by a spreadsheet that provided no information whatsoever other than it had some numbers that were not tied to any purchase or service. And a controlling case this court can follow is Cunningham v. Laser Golf Corp. 222F3943, a 2000 Federal Circuit case. There, this court looked at the board decision. The board was confronted with the mark laser swing for golf training aids as opposed to laser for golf clubs. And there, the board found that the marks are very similar, the services are identical, and then it didn't even address consumer sophistication. They just said it doesn't matter because the marks are so similar and the services are legally identical. And this court reviewing that said, any error by the board not specifically considering the sophistication of golfers was harmless. Yeah, but that was a specific case. Right. In light of the specific facts there. Exactly. The similarity in strength. I mean, that case does not stand for the proposition that any time the board finds similarity of marks and similarity of goods that they don't have to address sophistication or that it should be ignored in a way. And I think you're correct. And there in Cunningham they determined that the alleged sophistication was outweighed because of the strong similarity of the marks and the legal identicality of the services. You're also talking about golf clubs. Their evidence alleges that the average consumer contract that I reach confidentiality if I say the amount I'll just say is over $100,000. Right? I know the amount but I just don't want to tread on anything that might be confidential. So, their average consumer contract is quite high. I mean, look, my husband buys golf clubs he has not yet come home with a club like that. So, maybe the sophistication of someone purchasing a $100,000 system is going to be quite a bit higher and they're going to exercise more care in making sure they don't buy the wrong one accidentally than someone purchasing a golf club. That may be, Your Honor. But at the same time when the cases are legion that if the marks are highly similar and the services are identical then customer sophistication is if weighed it's weighed less. And that's what this board did here. They said there's evidence alleged evidence of consumer sophistication and so we're going to weigh it neutral or maybe slightly in favor of UBTA or of applicant weighing slightly in favor of no likelihood of confusion. That's the one factor they have in their favor. Counsel, when I look at these marks they look different to me. Of course, I'm reviewing someone else's decision to which I owe deference. I'm not making my own of an issue or decision. But they're in different colors. The UBTA mark is small capitals. The SNI is sort of stylized with a different color with a big S. There are differences there. So, Your Honor, at the outset we can discount the color because the registered mark doesn't claim a particular color. The registered mark has no color claim and thus is capable of embodying any color whatsoever. And so the fact that one is blue is of no moment to this Court because the registration covers whatever color wants to be present. And if you look at those marks together as the Board did they found and the substantial evidence supports as they looked at these marks together that both consist of a first term strata versus stratus that only differs by a syllable is even strong. One letter at the end of a syllable is the only difference there. Networks underneath the strata or stratus which is exactly identical and a circle or globe off to the left of both of those words with crisscrossing lines that the Board referred to that as similar designs incorporating the letter S preceding the wording. They looked at those and found they were highly similar. Then they looked at the sound comparisons. Stratus networks versus strata networks. At the outset of this case it was confusing even to us and we represent one of the parties to keep track of. I understand that you're marching through this in a very methodical way you're doing a great job in that regard but I guess for me I look at stratus and strata and I look at these two marks personally just my 10,000 foot level as an appellate court judge and I wouldn't be confused by them certainly not if I was buying a $100,000 product. Now if I sent my kids to the supermarket to get something for sure they would come home randomly with either one of these things but I wouldn't send my kids to buy something that costs $100,000. So I do think the sophistication matters even when you have similar marks which is what you have here. You don't have identical marks, you have similar marks. Well they're and we agree they're not identical they are highly similar, they look very similar they sound very similar and often times the court will find that similarity of the marks and similarity of the services are the most important factors when weighing this. I just don't think that's I understand that many times courts find that but it definitely depends on the type of product at issue. I mean if I'm buying a car and it's the biggest purchase I've ever made in my life and I'm putting a lot of money down on this car I'm going to be a lot more careful than if I'm going to the store and picking up some Kool-Aid or something, right? I mean, of course, it's natural the sophistication is going to matter more in cases where it's a much more expensive product that's being sold and when the consumers are much more sophisticated and careful in their purchasing It's got to be a sliding scale I think that's a fair point but counts would have you say all the other factors that weigh in UBTA's favor and all of the other factors weigh in UBTA's favor are somehow all controverted by the fact that there's some alleged consumer sophistication which is a naked allegation without any support and the board then decided even if we assume that That's the weighing part that we have to do That's the legal part See, that's why I don't buy into his argument that any of the fact findings the board made are wrong. I don't see it I don't see a single wrong fact finding but I do see some weighing that needs to take place and I do wish the board had done a better job of articulating something more specific on the sophistication Since they didn't, what I'm left with is really I need to accept what they argued about sophistication kind of as true and then resolve this I don't really know how else to treat the board opinion since they didn't make a specific fact finding otherwise Well, let's address that then, your honor The case lies really clear on this fact that when you have a scale of consumer sophistication and UBTA put in evidence and it's referenced in our brief, it was before the board that their customers range from the cell phone purchaser that's spending a little bit of money all the way to the same business customers the client is the applicant is referring to that spend upwards of $10,000 or more per month for UBTA services that when you're confronted with the sliding scale of purchasers you have to take the least sophisticated purchaser of those services You can't just automatically jump to the highest level and assume they're the only ones that are going to encounter the mark Why wouldn't you take the average level of sophistication? I'm not sure I understand why your logic about I can't take the highest, I have to take the lowest makes sense That would be writing some new law that this board has not There's nothing that supports what you're saying There's no case that says you must accept the least sophisticated consumer I believe that's incorrect, your honor I don't have one right in front of me today, but I'm happy to give you whatever references you would like, but here today to get hung up on consumer sophistication in light of the substantial other evidence in light of the every other fact in weighing in favor of UBTA would seem to contravene the prevailing case law and the standard of this court I want to address really quick the comparison of the services that counsel alluded to and frankly counsel is wrong in the fact that he's saying that the board only considered UBTA's telephone services in regards to the voice over IP services and ignored every other service listed in their application the paragraph that he's referring to in the appendix in the board's order in there the board looks at electronic and digital transmission of voice telecommunications, switched and dedicated voice communications, analog and digital voice communications, transmission of voice communications by various means transmission of audio conference calls and voice over IP services and looks at all those services and said all these services provide the same function as telephone services in the registrations, i.e. voice communication, thus as identified, these services referring back to all the services are legally equivalent to telephone services the board looked at all the services and found that the majority of them all related to the services offered by UBTA put in evidence in the declaration of Mr. Rasmussen that all but one of the one of the services listed in applicants for application were legally identical to UBTA's services Your argument, if I understand it right is that there are overlapping services right? Not just overlapping but identical It's not a complete identity between the services that they seek to cover and the services that your registered mark covers In the perspective of you have a broad category of services as opposed to a smaller subset of those same services telephone services is a very broad category of services and all of these different communication services fall within the subset or are subsets to those telephone services And let me circle back, Your Honor to answer your question, Judge Moore regarding if there's case law that supports our sophistication of the customer's analysis. StoneLine Capital Partners is a federal circuit case also Ford Motor, Covey Summit Motor Products, Inc. third circuit case, both of them state that when the relevant consumer sophistication varies the relevant level of sophistication is that of the least sophisticated consumers for the services recited in the application of registration not the actual consumers of the parties. Now here and this is very important there is no restriction whatsoever in the registrations, restricting it to classes of customers or to channels of trade and there's no restriction whatsoever in the application because there's no restriction the law is clear and that there is no need to look at channels of trade or even the consumer sophistication these classes of customers because they're all presumed to be the same absent a restriction, they're all presumed to be the same and for these reasons, Your Honors, we submit that the Board's order should be affirmed Thank you. Thank you, Counsel Mr. Jones has any other comments? Your Honor, related points so the laser golf case which was discussed about the customer sophistication again those were with identical golf clubs, they're both dealing with golf clubs and I believe Judge Moore alluded to it, these aren't identical services and it was an error for the Board to find as such. But they overlap, don't they? There may be some overlap, certainly, Your Honor but that's a very important difference because if they're not identical, if the services or the goods are not identical, then you do not have the presumption that they travel in the same channels of trade for example and so that factor weighed against. But the Board made a fact finding accordingly, didn't they? They made a fact finding that they were identical and then the trade channels they said we presume they travel in the same channels of trade based on the fact that they're identical. If they're not identical then that presumption should not apply. Some of them are identical and when you're trying to assess the likelihood of confusion if you cover t-shirts, mugs, and posters and they have a mark only to ensure that you're seeking a mark on these other categories, if you're identical in one of the categories, then the Board is meant to and should properly focus on whether there be a likelihood of confusion in selling the one thing in which you're identical on and so I don't see a problem in the presumption of trade channels. If you overlap, that means for at least some of the goods and services for which claiming the mark applies to are identical. If they overlap and then that they're related but not identical and they're not identical in this case. Voice over internet protocol is not identical to telephone services. UBTA's own evidence submitted showed that they provided a dictionary definition where voice over internet protocol is a low cost alternative to telephone services and there's no discussion at all about the consumer impression of whether, the fundamental error here is that they're comparing, the Board's comparing the services themselves. There's no, you're supposed to compare what a consumer is going to think and a consumer, so evidence of that would be, hey, here's a bunch of businesses that provide VoIP services and traditional telephone services or here's registrations that encompass both things. That was not provided here and so that was a fundamental error in that factor in which we don't think substantial evidence supports that and then we would ask you to reverse the Board. Thank you counsel. We'll take the case under advisement.